**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JASON VADEN,** | ) | |
| | ) | **DOCKET NO.** |
| **Plaintiff,** | ) | |
| | ) | **JURY DEMANDED** |
| **v.** | ) | |
| | ) | |
| **PUTNAM COUNTY, TENNESSEE** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Jason Vaden, by and through counsel, hereby sues Putnam County, Tennessee for disability discrimination and retaliation and retaliatory discharge under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et. seq., and the Americans with Disabilities Act of 2008, et. seq. For his cause of action, Jason Vaden states as follows:

PARTIES

1. Plaintiff, Jason Vaden ("Mr. Vaden"), is an adult citizen and resident of Putnam County, Tennessee. Mr. Vaden was employed by Defendant for eight (8) years as a maintenance technician.
2. Defendant, Putnam County, Tennessee ("Putnam County") at all times relevant to this Complaint was Plaintiff's "employer" as defined by 42 U.S. Code § 12111.

JURISDICTION AND VENUE

3. This action raises federal questions over which this Court has jurisdiction pursuant to 42 U.S.C. § 12101 et. seq.

4. Venue is proper pursuant to 28 U.S.C. § 1390 because Defendant may be found in this District, employment records relevant to Plaintiff's claims of action are maintained in this District, and because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## FACTUAL ALLEGATIONS

5. Mr. Vaden was employed by Putnam County as a maintenance technician for eight (8) years and his duties included performing various maintenance tasks in county buildings.

6. When Mr. Vaden was employed by Putnam County, Defendant was aware that Mr. Vaden suffers from post-traumatic stress disorder ("PTSD"), anxiety, and depression. Due to these conditions, Mr. Vaden was on a long waiting list for a service dog.

7. In Fall 2023, Mr. Vaden learned that he would be receiving a service dog in December 2023. In October 2023, Mr. Vaden notified Putnam County that he would be receiving a service dog and requested accommodation.

8. Upon requesting accommodation for his service dog, Mr. Vaden was told that this was a "legal issue", and that the county attorney would need to be involved. Mr. Vaden was then called in for an in-depth, invasive, and inappropriate interrogation about his disabilities and his need for accommodation with Putnam County.

9. Putnam County told Mr. Vaden that they did not believe he needed a service dog or the requested accommodation because he was already doing his job without a service dog.

10. This intense interrogation and questioning of his disabilities caused Mr. Vaden to have a panic attack. Mr. Vaden was forced to undergo the same triggering interrogation the following week.

11. At the end of December 2023, Mr. Vaden received his trained service dog – a one-year-old golden retriever named Gabe. Gabe is trained to assist Mr. Vaden with his PTSD and anxiety.

12. Mr. Vaden was not allowed to bring Gabe to work with him by Putnam County.

13. On or about January 22, 2024, Mr. Vaden was subjected to more interrogation related to this request for accommodation and his disabilities, specifically Putnam County's "safety concerns."

14. Putnam County told Mr. Vaden they were concerned about his ability to climb a ladder, work on scaffolding, operate machinery and other equipment, and spotting co-workers.

15. Putnam County never had these "concerns" about Mr. Vaden's abilities until he requested accommodation related to his disabilities.

16. Following the January 22, 2024, meeting, Mr. Vaden was told that he would be required to see a company doctor and put Mr. Vaden on indefinite paid leave until this matter was resolved.

17. On or about February 9, 2024, as required by Putnam County, Mr. Vaden saw Dr. Toney Hudson ("Dr. Hudson"). The appointment with Dr. Hudson can best be described as a disaster.

18. Dr. Hudson, who had no background information regarding Mr. Vaden's health or disabilities, did everything he could to belittle and talk down to Mr. Vaden. Dr. Hudson repeatedly referred to Gabe as a "puppy" and suggested that Mr. Vaden's disabilities could be fixed with medication and more trips to church. The entire appointment felt like a charade.

19. Following his appointment with Dr. Hudson, Mr. Vaden did not hear from Putnam County for almost two months and only when he sent a formal letter requesting an update on the matter.

20. At the beginning of March 2024, Mr. Vaden sent a letter to Putnam County requesting an update on this matter – specifically requesting the status of his job, the results of his appointment with Dr. Hudson, and to continue the interactive process required by law.

21. On or about April 1, 2024, Mr. Vaden received a response from Putnam County requesting a meeting to discuss the letter he sent in March 2024.

22. On or about April 3, 2024, Mr. Vaden met with Putnam County. At this meeting, Putnam County informed Mr. Vaden that Dr. Hudson believed he was a "danger" and was "unable to work in his current position." Nothing about Mr. Vaden's disabilities or work had changed – the only change was that Mr. Vaden had requested accommodation.

23. Mr. Vaden conveyed his concerns about the appointment with Dr. Hudson to Putnam County and stated that his treating physicians wholeheartedly disagreed with Dr. Hudson's position.

24. At this meeting, Mr. Vaden was notified that he was going to be put on another leave for approximately six (6) to eight (8) weeks. During this leave, Putnam County requested that Mr. Vaden apply for other available jobs with Putnam County and mentioned that they may have a position opening at the county dump that they believed would be perfect for him and Gabe.

25. Mr. Vaden was further informed that if he did not find a suitable position during the leave, he would be placed on FMLA leave for a period of twelve (12) weeks and they would meet again at that time.

26. During the meeting, more than one of Putnam County's representatives requested to pet Gabe. Mr. Vaden declined and noted that Gabe was working.

27. Following this meeting, Mr. Vaden began checking the Putnam County website daily for jobs posted. Most, if not all, of the jobs posted were not jobs Mr. Vaden would be qualified for like EMTs.

28. On or about April 8, 2024, Putnam County contacted Mr. Vaden about the job at the county dump. When Mr. Vaden had questions about the position – Putnam County admitted that the details of the position had not been finalized and they just wanted to "test his interest." At no point did Mr. Vaden decline or express disinterest in the position.

29. On or about April 10, 2024, Putnam County contact Mr. Vaden about another meeting – but this time they wanted this wife to attend the meeting with him. Mr. Vaden's wife is a working physician with no availability for close to three months at that time. When Mr. Vaden asked why his wife needed to be present – no one could provide him with an answer.

30. Mr. Vaden was further told, in direct opposition to what he was told on April 3rd, that he needed to complete an application for FMLA leave to begin the next week. When Mr. Vaden had questions about this, another meeting was scheduled.

31. On or about April 15, 2024, Mr. Vaden was forced into FMLA leave based upon the report prepared by Putnam County's doctor, Dr. Hudson. None of Mr. Vaden's treating physicians were involved in this matter.

32. On or about June 19, 2024, Putnam County finally posted the county dump job that was supposed to be perfect for Mr. Vaden. The job posted was only a part-time position.

33. On or about July 30, 2024, Putnam County posted Mr. Vaden's maintenance technician job on their website.

34. On or about August 6, 2024, Mr. Vaden was called into another meeting by Putnam County. At this meeting, Mr. Vaden was asked a lot of personal, invasive, and inappropriate questions about my health and disabilities. Mr. Vaden was told that Putnam County would be in contact.

35. The representative of Putnam County acted highly inappropriate at the August 6th meeting. The representative grabbed and petted Gabe without asking and repeatedly referred to him as a "baby." It is standard knowledge to not touch a service dog without permission of their owner.

36. The actions of this representative show just how little Putnam County thinks of service dogs and of the individuals that need them. They are not taken seriously and instead are infantilized.

37. On or about August 28, 2024, Putnam County, via their social media, proclaimed that it was therapy dog appreciation week. Putnam County apparently is okay with untrained and unregulated therapy and emotional support dogs but will not allow their employees to work with trained and regulated service dogs.

38. As of the filing of this Complaint, Mr. Vaden has never been officially fired by Putnam County, but he has not been allowed to return to work since January 22, 2024.

39. Mr. Vaden was forced into FMLA leave he did not need or request and was never allowed to return to work.

40. Mr. Vaden was effectively terminated on January 22, 2024, despite Mr. Vaden's desire to continue his employment with Putnam County.

41. Putnam County never had any problem with Mr. Vaden, his disabilities, or his job performance, until Mr. Vaden requested accommodation related to his disabilities in clear violation of the law.

VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

42. Mr. Vaden alleges that Putnam County discriminated against him and discharged him because of his disability, his record of having a disability, or because Putnam County regarded him as having a disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq., and the Americans with Disabilities Act of 2008.

43. Mr. Vaden alleges that Putnam County failed to provide him with reasonable accommodation and failed to engage in the interactive process in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq., and the Americans with Disabilities Act of 2008.

44. Mr. Vaden alleges that Putnam County retaliated against him for engaging in a protected activity related to his disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C § 12101 et. seq., and the Americans with Disabilities Act of 2008.

45. At all times herein, Mr. Vaden's diagnoses constitute physical and mental impairments that substantially limited one or more of his major life activities, he had a record of having such impairment, and this was apparent to Putnam County.

46. Putnam County perceived or regarded Mr. Vaden's diagnoses as physical and mental impairments that substantially limited one or more of his major life activities, consistent with the definition of a "disability" provided under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq.

47. Despite Mr. Vaden's limitations, he was more than capable of performing the essential functions of a maintenance technician.

48. Putnam County had ample notification and information about Mr. Vaden's disability and the challenges in posed to him.

49. Accommodating Mr. Vaden's disability by allowing him to work with his service dog would not have caused any undue hardship to Putnam County.

50. At no point did Putnam County communicate that accommodating Mr. Vaden's disability by allowing him to work with his service dog would have caused any undue hardship to Putnam County.

51. At all times relevant, Defendant employed over fifteen (15) employees.

52. Mr. Vaden filed an EEOC charge in this case on June 7, 2024.

53. A Notice of Right to Sue letter was issued to Mr. Vaden by the EEOC on September 26, 2024. Therefore, Mr. Vaden has exhausted his administrative remedies by filing a charge of discrimination with the EEOC.

54. As a result of Putnam County's ADA violations, Mr. Vaden lost a job he enjoyed, incurred lost wages, and suffered emotional distress, embarrassment, humiliation, and loss of enjoyment of life.

<u>WHEREFORE PLAINTIFF PRAYS:</u>

A. That Plaintiff be awarded compensation in an amount to be determined at trial for past, present, and future wages and benefits, incidental damages, compensation for emotional distress, humiliation, mental anguish, embarrassment, suffering, and other non-pecuniary losses.

B. That the Court award Plaintiff punitive damages.

C. That the Court award Plaintiff the attorneys' fees and costs incurred in prosecution this action, and other discretionary costs allowed by law.

D. The Court award Plaintiff such other, further, and general relief to which he may be entitled.

E. That a JURY be empaneled to try this action.

Respectfully submitted,

**MASSEY & ASSOCIATES, P.C.**

*/s/ R. Ethan Hargraves*
R. Ethan Hargraves, BPR No. 033331
Joshua R. Ward, BPR No. 031329
6400 Lee Highway, Suite 101
Chattanooga, TN 37421
Ph: 423.697.4529; F: 423.634.8886
ethan@masseyattorneys.com
josh@masseyattorneys.com
*Attorneys for Plaintiff*